on behalf of the L-1, Mr. Dan Cain, on behalf of the L-1, Mr. Carl Larson. Thank you. Mr. Cain, good morning. Thank you. Good morning. Your Honor, I represent the defendant at L-1, Captain Williamson. My name is Dan Cain. I'm from the Law Court of Intrusion in Cayman Rockford. Mr. Cain, can you do me a favor and pull that microphone a little closer? I have a horrible cold and can't hear. We also have a fan on the ceiling that makes it hard to hear, so please keep your voice up. I'll do my best. Thank you. Forgive me if I'm nervous. I've never had an opportunity to argue before this court. But I'll do my best to keep my voice up. I have a little cold myself. This appeal is based upon the trial court's denial of the defendant's motions to quash search warrants and suppress physical evidence and the resulting judgment of conviction based upon a stipulated bench trial, which thereafter occurred. Search warrants were issued for the premises described as 624 East Crocker Street in Freeport, Illinois. The search warrant was based upon an affidavit where there were actually two affidavits. One was an inspector with State Line Area Narcotics named Stovall. The other was an unnamed informant. It is the defendant's position that under no reasonable reading of the affidavit in support of the complaint, the search warrant was probable cause of establishment to indicate that evidence as specified in the search warrant documents would then be located in the 624 East Crocker residence. So in essence, you're saying it's stale. You're saying the information is stale, right? I'm saying that it is worse than stale. I'm saying, Your Honor, that there's no evidence to indicate that drugs were ever located inside those premises. I'm saying that there's no evidence to indicate that the defendant owned the premises. The affidavit will indicate that the informant had never been inside of the premises. The affidavit never places the defendant inside of the premises. The affidavit never states that anybody saw drugs inside of the premises. So I believe this is much more than a staleness issue, Your Honor. Well, if we were to look for a minute at the staleness aspect of this and put aside for a minute your position going beyond that, you rely on People v. Damien in support of that staleness argument. But isn't that case very different than the facts we have here? In Damien, there wasn't anything to indicate that there was a continuing course of conduct, whereas here, we have information that over a period of six months, there were at least four controlled buys or four incidents where the informant bought drugs. We also have, from the defendant, we also have information that within 72 hours, the issuance of the search warrant, the defendant also sold drugs and recently sold drugs. Now, one of the incidents was at the Iroquois address. But again, isn't all of this, doesn't all of this go to the continuing course of conduct, which is not present in Damien? Your Honor, I agree that the continuing course of conduct was not found in Damien. But the continuing course of conduct inside the premises of 624 East Crocker is absolutely missing. So although there's a continuous course of conduct, there is no statement, there is no evidence contained in this affidavit that any criminal conduct occurred within those premises. Well, you know, this is a little confusing as I look at the facts. The search warrant here was issued for 624 East Crocker, correct? Yes, sir. Didn't the affidavit say on four occasions Dole, the informant, negotiated the purchase of crack cocaine at, quote-unquote, 624 East Crocker with the defendant? Two other times within the previous six months, Dole was to be present at 624 Crocker and observed the defendant in possession of an amount of crack cocaine packaged for sale. You're saying there was no allegations in this affidavit that anyone was ever at 624 Crocker? Is that your position? No, sir. Inside 624 East Crocker, the search warrant authorizes the search of the interior of those presences. Could the court reasonably conclude that that was his base of operation? He was selling out of that house? Your Honor, I believe to the contrary. The affidavit itself, and I believe the first paragraph written by Agent Stola, states that this investigation relates It's a drug investigation pertaining to the defendant at 636 Iroquois and not 624 East Crocker. To answer your question, Your Honor, when there's some statement in an affidavit that within the last six months somebody negotiated a drug transaction at Crocker, the mere negotiation of a transaction is not the same as drugs being contained within the premises or even that the negotiation occurred inside the premises. So you're saying at the residence doesn't necessarily establish that there was something observed in the residence? It absolutely does not establish that. And in fact, Your Honor, when the informant talks about making the control buy at Iroquois, he specifically stated that he was invited in inside the Iroquois premises and that the drug transaction occurred within those premises. If he was actually inside the Crocker premises, he certainly would have so stated as he did with respect to the Iroquois premises. When you talk about the negotiations, Your Honor, I can negotiate the sale of a vehicle inside or at my house for the purchase and sale of a vehicle I have in some different storage area. So the fact that something was negotiated at a particular residence doesn't mean in any respect... There's drugs in there, you're saying. That's right. Yes, sir. But now, Mr. King... You couldn't fit a car in your residence. I couldn't fit a car in my garage, Your Honor. Mr. King, the magistrate is not supposed to look at this in a hyper-technical way and couldn't a reasonable interpretation of at this residence be in the residence in context of everything else that is said in this affidavit? And isn't our interpretation in looking at this to be in favor of warrants being issued? Respectfully, Your Honor, I don't believe it's reasonable under the entirety of the affidavit to state that at the Crocker residence can reasonably be interpreted to mean within the premises based upon the fact that he didn't say at the Iroquois residence. He said inside of the Iroquois residence. And the fact of the matter is that this is an experienced investigator who is the law enforcement affidavit. She's an inspector. I believe that had the informant been inside of the Crocker residence, it certainly would have been so stated. Although I understand, Your Honor, that the trial court stated in his memorandum opinion and order that a reasonable judge could interpret at as being inside. There is certainly no necessity for it. And by the plain reading of it, coupled with the examination relating to the Iroquois transaction, I don't think it's a reasonable inference. Let's talk about the good faith exceptions. You touched on the judge's rule. How about the good faith exception to the exclusionary rule? What the court heard? Well, with regard to the good faith exception to the exclusionary rule, obviously it emanates from the Leon case. The Leon case talks, and I quote, deference to the magistrate. However, it is not boundless. It says basically in the next paragraph, third, reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause. In the Hiber case emanating from this court, Your Honor, the Hiber court indicated, stated, citing Leon, reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause. My understanding of the cases decided by this court thereafter follow the Hiber case. The facts in the Hiber case, it seems to me, were more compelling for the issuance of a search warrant than this case. Well, let's go through the factors that Leon talks about. Was the issuing judge misled by information in an affidavit that the defendant knew was false or would have known was false except for his reckless disregard for the truth? I know, Your Honor. Did the judge fully abandon his judicial role? Certainly, that can be reasonably argued. And the reason that can be reasonably argued in my judgment is that based upon the statement in the affidavit where the affidavit concludes that probable cause exists for the issuance of a search warrant at, I believe she indicated, 636 or 624 East Iroquois. East Crockett. No, she listed the Iroquois address, I believe. The affidavit indicated in conclusion that she believed the probable cause existed for a search on the Iroquois residence, listing the Crocker numerals but the Iroquois street name. And with all due respect, I believe that it's the function of a neutral magistrate to carefully review the search documents. And had that been accomplished, the obvious defect would have not gone uncovered. And so it can be argued that the magistrate abandoned that aspect of her function. Counsel, a couple points. You had raised the issue initially and had some intuitive appeal that the affidavit can be read to establish that the informant was not actually, quote-unquote, in the residence but at the residence, which you're right, could imply somebody's negotiating in a driveway. However, isn't there a line of cases, specifically Moser, 356 Illinois Appellate 3rd at 908, that says probable cause does not require that the alleged criminal activity must have actually occurred at the location to be searched? So the case law does not seem to require that in all circumstances, in every circumstance, the offense had to be observed, the drugs had to be observed physically inside the residence. Yes, Your Honor, I agree with that. So long as probable cause is established through some different method or means, if probable cause is established, then certainly it's appropriate to issue the search warrant for those premises. I suggest to you that's not the case here. So the inference couldn't be drawn that this defendant was on a continual basis selling drugs, that his residence was the Crocker Street residence, and therefore the judge could not have inferred that the drugs would be found within the residence? No, Your Honor. Even if, let's say, the sale occurred or the negotiation for the sale was in the driveway or, quote, at that address? The mere fact that a discussion, a verbal discussion relating to negotiations occurs in the driveway, absent other evidence indicative of probable cause, is not a sufficient basis to issue a search warrant for the interior of those premises, especially when you have all the information contained in the affidavit suggesting that the Iroquois residence is the residence where the defendant conducted illegal transactions. But they say he conducted them at Crocker, too. Respectfully, I disagree. The informant did not state that any illegal transaction occurred within the premises of Crocker. But does it have to occur within the residence of Crocker to authorize a search warrant? Your Honor, again, not in every case. But in this particular case, there's no extraneous evidence to establish probable cause that the articles to be seized, named in the search warrant, would then be located within the Crocker residence. So I'm not saying that in every case there must be an illegal drug transaction personally observed by somebody within the premises. But if that's not the case, probable cause must be established in some other fashion. And that's not the case here. Mr. Kane, you'll have additional time on rebuttal. Thank you. Thank you. Thank you. Mr. Larson. Good morning. Good morning. May it please the Court. It would seem that there are several points of contention between the appellant and the appellee in this case. During his argument, perhaps one of the major points of contention was what definition should be given to the word at. Correct. Referring to Merriam-Webster's dictionary, at means used as a function word to indicate presence or occurrence in, on, or near. If at is given the definition of occurrence in, the sales alleged to have occurred at 624 East Crocker would indeed be within 624 East Crocker. Aside from that, I want to put this question out early on. He seems to be suggesting, well, that's well and good. I suppose somebody could be using some neighbor's driveway to negotiate the sale of drugs. So I guess my question to you is what facts are alleged in the affidavit showing some connection between the defendant and 624 East Crocker? Well, if the six times that he was observed at that residence with cocaine packaged to sale or to sell aside, because I think that that also establishes connection to that residence, there's the fact that that's the defendant's driver's license, or the address on the defendant's driver's license. Inspector Stovall has seen the defendant at that location on several occasions. She's also familiar with one of the vehicles he drove and observed that vehicle parked at that residence on several occasions. And despite the fact that his license list, that is his official address, that's in the record? That is within the search warrant. Okay. And what do you make of the wording in the search warrant that talks about on approximately two occasions within the last six months, I was to be present at the residence and observed Williamson in possession of an amount of crack cocaine packaged for sale to another? I think that a reasonable inference from the reading of that is that that was a mistake. It's a technical error not affecting the substantial rights of the accused. It was a typographical error. The reasonable interpretation, I would argue, would be that the defendant was present, and there's just a duplication of the verb to be. The other major points of contention, although there are some minor points as well, involve the continuing course of conduct and the application of the good faith exception. With respect to the evidence of the continuing course of conduct, I would first argue that the facts alleged or stated in the affidavit should be presumed true, because this was an affiant who appeared personally in front of the issuing judge. And under People v. McCoy, as well as, I believe, the Mosier case, when an affiant appears personally before the issuing magistrates and swears to the contents of an affidavit, the contents of that affidavit, absence of Frank's hearing or hearsay, should be presumed valid. Now, in McCoy, there wasn't a pseudonym used, but there was in Mosier. That being said, I believe that there is evidence of a continuing course of conduct in this case, especially when compared to People v. McCoy and People v. Beck. The indication is that in a period of six months, there were four sales of cocaine at that residence, and the defendant was observed with cocaine on two other occasions. Recently, in respect to the issuance of the search warrant, the defendant sold Jane Doe cocaine immediately after leaving that residence, and within 72 hours of the issuance of the search warrant, the defendant was still engaged in the delivery of cocaine. Now, in that case, it was at a different address. It was at the Iroquois Street address. However, in People v. Beck, the court indicated that a reasonable inference can be made with respect to nexus, and in that case, they made that reasonable inference on the basis of the officer affiant's training and experience that people who engage in money laundering traditionally will keep the indicia of money laundering in their house. Now, that's general information about a category of criminal, and it was sufficient to create a nexus. In this case, we have specific information about this defendant, that he kept drugs at his residence on six occasions in the six months, and that he sold drugs immediately after leaving his residence. I would argue that that's stronger evidence of nexus than was present and found to be acceptable in People v. Beck. But now, in discussing the allegation of a recent buy, you use People v. Speed as the authority that you rely on, but isn't that case distinguishable there? The affidavit did contain language that the police had been in touch with the informant within the three days prior so that there was some time context there. Here, we don't have any time context. In this case, the affiant was personally present in front of the issuing magistrate. The contact between the two of them wasn't three days ago. It was at that second, at the second of the issuance of the affidavit. Now, if this were a case where the magistrate had issued a search warrant on the basis solely of information that a recent sale had taken place, I think it might be a difficult question. But in this case, there's significant other evidence as well, including the sale within 72 hours and the six other sightings of the defendant with cocaine packaged for sale or sold. Counsel, let's get into the good faith exception briefly if we could. Tell us why or when that exception would apply here. The defendant argues that the good faith exception shouldn't apply because a substantial basis for believing probable cause existed. It didn't exist. The defendant, when he cites the substantial basis language, is citing from Leon at page 914 and 915. That section of People v. Leon refers to when deference is due to the magistrate. The exclusionary rule has no application to an issuing magistrate. The exclusionary rule, according to Leon, only applies to police officers. Later, in the Leon case at point site 923, the court sets forth the so-called exceptions to the exception. These are the situations where police officers should not be deemed to have reasonably relied on the issuance of a search warrant. The third prong, as set forth in Leon, is unlike the defendant's contention, is reasonable. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit so lacking in the indicia of probable cause as to render official belief in its existence entirely unreasonable. That's the third prong of the good faith basis, not whether or not the magistrate had a substantial basis for the issuance of the warrant. The third prong is the standard of review to be applied to whether or not the magistrate should have been determined to have issued a warrant in the absence of a sufficient showing of probable cause. If the defendant's formulation of Leon is adopted, the Leon good faith exception would cease to exist because having found that a substantial basis for the issuance of the search warrant didn't exist, the court would also have to find that the good faith exception didn't apply. So you're saying in making the bootstrap argument, if we were to adopt his reasoning, then the absence of probable cause would automatically defeat the exception in every case? The absence of a substantial basis for believing the probable cause existed, yes, Judge. All right. What about, however, he points to Hieber, which is sort of interesting because how do you distinguish Hieber, which ostensibly gives him some basis for his argument? Hieber cites the formulation that the defendant cites, and it point cites 923 of the Leon case, the substantial basis language that Hieber point cites does not exist on page 923 of Leon. So you're saying Hieber was wrongly decided? I would respectfully ask the court to review carefully the formulation in Hieber in relation to the actual language that exists in Leon. And if the Hieber formulation is adopted, it will vitiate the existence of the good faith basis. Now, is Hieber being criticized in subsequent cases? Are you aware of any cases, then, that have taken issue with the holding in Hieber? Yes. The Fourth District in People v. Cook indicated that absent the citation to read, the reasoning in Hieber, it argued, was highly questionable. It indicated that if the absence of probable cause was sufficient to defeat the good faith exception, then the good faith exception would cease to exist. There also are issues of disagreement between the parties with respect to the standard of review. But before I get to that, I do want to address one other thing. The defendant in his argument indicated that the scrivener's error in the concluding paragraph of this affidavit stood for the proposition that the reviewing magistrate wholly abandoned her role. I disagree with that, and I would make this argument. The reviewing magistrate should be presumed to know the law, and the concluding paragraph is surplusage. It neither adds anything to the quantum of probable cause nor takes anything away from the quantum of probable cause. That being the case, I would argue that it would be a greater abandonment of judicial role to correct what is a scrivener's error that in no way affects the defendant's substantial rights in this case. It would be more consistent with the case cited by Leon in respect to when a magistrate wholly abandons her role. That site was Low JV, New York, and in that case the magistrate went along with the police to execute a search warrant and filled out the search warrant in the process of the execution. I don't, and this case should also be distinguished from cases where the ambiguity or a crucial piece of the search warrant was completely missing. For example, within the command portion of the search warrant, the description or location he searched was completely absent. Perhaps an argument could be made that there was an abandonment of judicial role. However, in this case, the command portion of the warrant is absolutely clear. The order of the court, the search warrant itself, leaves no discretion to the reviewing or to the executing officer as to where to search. For that reason, I would argue that there's no flaw in particularity, and the scrivener's error in the concluding paragraph doesn't affect the substantial right of the accused. I would argue in this case that the standard of review is a substantial basis standard of review. I'm relying on Illinois v. Gates for that quote, although it should be noted that the case the defendant cites, People v. Damien, did not apply a substantial basis standard of review. It didn't apply a de novo standard of review. It applied a manifestly erroneous standard of review. I believe that that's not consistent with later decisions. The parties agree in this case that the issue is the sufficiency of the affidavits, and when that's the case, Illinois v. Gates makes it very clear that the formal review should not be de novo, but instead should be a, so long as there's a substantial basis for believing that probable cause existed, the Fourth Amendment requires no more. The defendant also denies that any of the purchases of cocaine took place, indicating, I think, that the facts in the affidavit have not been sufficiently established. I would cite to McCoy and Moser to indicate that the presence of the John Doe personally means that further reliability is not required, but to the extent that it was. In this case, there are a number of control bias, five felony convictions leading from this confidential informant's work, as well as a long history of working with these officers. Moving back to the Hyder case, Hyder cites for its formulation of the good faith basis not only people v. Leon, but also people v. Bowen, B-O-H-E-N. The point that is cited to in people v. Bowen also doesn't contain the substantial basis language. The point site contained in people v. Bowen also contains the reasonable reliance language. Later in the Heber case, the Hyder court indicates that the state makes much of the third prong of the Leon test being and cites the reasonableness language. That being the case, I would argue that the test that should apply should be that whether or not a reasonable officer or any reasonable officer could believe that probable cause to search existed. Given the long history of sales from that residence and the indication that this is an ongoing course of conduct, I would ask the court to find both that the issuing magistrate had a substantial basis for finding that probable cause existed and that the officers in this case reasonably relied in good faith on the issuance of that warrant. Thank you. It's been an honor. Thank you very much, counsel. Mr. Cain? Mr. Cain, could you answer as a threshold matter? Counsel stated that your client listed his address and his driver's license at the Crocker address. Isn't that pretty compelling evidence of the fact that he lives there? Respectfully, no, Your Honor. There's no indication in the affidavit in regard to the year that that license was issued. This is apparently a long-term investigation. The fact that at some point in time, we know not when, the Secretary of State's records indicated that was his residence does not indicate the status of his residence at or about the time of the issuance of the search warrant. She never indicated, for example, the year of that license, whether it was a current license. We're devoid of that type of information in this affidavit. That's the problem with the argument. We know the case law is replete with holdings that the magistrate is to look at the allegations and the totality of the circumstances in what's called a common-sense approach, not in a hyper-technical manner. Wouldn't most people, if they see someone's driver's license for identification, probably believe in the real world they're living at that address? Yes, sir. But we're not told by a very experienced inspector whose motivation is to obtain the search warrant. We're not told any facts in regard to when she looked that up or when the license was issued or whether or not the defendant even had a valid license at that time. So I don't think that is sufficient. Well, let me just follow up on that point. We know that at some point you can't stand there and dispute that at some time he must have lived there unless he perpetrated a fraud on the Secretary of State, correct? Can we assume at some point he lived there in time? I think we can assume at some point. At some point. It may be that he has dual residences. We hear of Iroquois and we hear of Crocker. It certainly, we assume that he listed the Crocker residence as his residence at some point. At some point. And then he's outside, you'd have to concede at least, even if you get into this at hyper-technical interpretation, he's negotiating at the driveway of this residence that he lists as his residence. You're saying there's not a sufficient nexus or connection there to this property? If he was at the premises negotiating an illegal transaction, that is insufficient evidence to establish probable cause that drugs are inside the premises on the date of the issuance of the search warrant. Your Honor, and even if you take umbrage at my hyper-technical suggestion that it does not meet inside, even though other portions of the affidavit would talk about inside, it's still six months down the road. And as we get back to your suggestion relating to staleness. But isn't a continued course of conduct that this, it's a continued course of conduct? There is a suggestion of a continuous course of illegal conduct, but not within the premises of Crocker Drug. There is no evidence, there's no assertion that illegal drugs have ever been inside those premises. You conceded it doesn't have to be shown under all circumstances that it was in the premises, correct? I have conceded that, but I only, I've conceded it on a very qualified basis, Your Honor. The probable cause has to be otherwise established that drugs are inside the premises at the time of the issuance of the search warrant. And I do not concede that. Doesn't McCoy say it doesn't have to be right at the time of issuance of the search warrant? It has to be within a such time that would reasonably establish a substantial basis for determining probable cause that they are there at the time of the issuance of the search warrant. And I submit that's lacking here. Well, how would you distinguish this hypothetical? There's a shooting. Somebody has a bunch of assault weapons and there's some shooting somewhere, okay? Nobody has ever seen any weapons in the defendant's house. The police could never get a search warrant for the defendant's residence on the basis that nobody ever saw a weapon in the defendant's residence, according to your argument, correct? Unless probable cause exists in some fashion other than that which you describe, Your Honor, that would be my position. There must be a substantial basis to establish probable cause that evidence of the crime is within the premises to be searched. The mere fact that a person commits a crime with, for example, a weapon at some point doesn't mean there's probable cause for the issuance of a search warrant for his house. So it can be recorded that a person bought a bunch of assault weapons from a given gun dealership. There's a horrific shooting. Nobody's ever seen the weapons inside the residence, but the police, the federal government, could never go in the residence, according to you, because nobody's ever seen a weapon in the residence. Doesn't that sound a little troubling? No, sir. I think it's consistent, honestly, with Fourth Amendment principles requiring probable cause to establish evidence of a crime within the premises. By inference, if a person has a bunch of weapons, the inference could be legitimately they're in the person's residence, correct? I think there's case law to the contrary, Your Honor. I think there has to be much more factual information than what we are here discussing. In this particular case, please don't lose sight of the fact that this is an investigation relating to Williamson on Iroquois. All of the probable cause appears to be Iroquois-related, the controlled buy-in within 72 hours from Iroquois. If this informant had been in the premises at Crocker or had purchased drugs inside the premises at Crocker, it would be so stated, and we simply do not have that. I submit to you respectfully that this shouldn't be a close case. This affidavit is devoid of information linking Crocker to the evidence or articles to be seen, see, specified in the warrant. Thank you very much, counsel. The court will take the matter under advisement and render a decision in due course.